UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHNATHON HOUSEHOLDER,<br><br>        Plaintiff,<br><br> -against-<br><br>THUNDER BRIDGE ACQUISITION II, LTD., GARY SIMANSON, DAVID E. MANGUM, MARY ANN GILLESPIE, ROBERT HARTHEIMER, STEWART PAPERIN, and ALLERD DERK STIKKER,<br><br>        Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

   Plaintiff Johnathon Householder ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

   1.  This action is brought by Plaintiff against Thunder Bridge Acquisition II, Ltd. ("Thunder Bridge" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Thunder Bridge, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Merger") between Thunder Bridge and Ay Dee Kay, LLC d/b/a indie Semiconductor ("indie"). Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law.

   2.  On December 14, 2020, Thunder Bridge entered into an Agreement and Plan of

1

Merger (the "Merger Agreement"). The Merger Agreement reflects an implied equity value of the combined company of $1.4 billion, based on current assumptions, with a $10.00 per share PIPE subscription price. Upon closing, the combined company will receive up to $495 million in cash, comprised of a $150 million PIPE and up to $345 million in cash held in trust by Thunder Bridge II, assuming no redemptions by Thunder Bridge shareholders (the "Merger Consideration").

3. On January 25, 2021, in order to convince Thunder Bridge shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading registration statement on Form S-4 with the SEC in violation of Sections 14(a) and 20(a) of the Exchange Act and in breach of the Individual Defendants' duty of disclosure. In particular, the Registration Statement contains materially incomplete and misleading information concerning the financial advisor and lead private placement agent to the Company, Morgan Stanley & Co. LLC ("Morgan Stanley"), as well as the lead capital markets and advisor to indie and joint private placement agent to Thunder Bridge, Deutsche Bank Securities ("Deutsche").

4. The special meeting for Thunder Bridge stockholders to vote will be scheduled in the coming weeks as the transaction is expected to close in the first quarter of 2021 (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the Shareholder Vote so Plaintiff can cast an informed vote and properly exercise his corporate suffrage rights.

5. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and breach of the duty of disclosure. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to Thunder Bridge's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger

is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act and breach of the duty of disclosure.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8. The Court has supplemental jurisdiction over the state law claim for breach of the duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316

10. Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Thunder Bridge's common stock trades on the Nasdaq, which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

**PARTIES**

11. Plaintiff is, and at all relevant times has been, a holder of Thunder Bridge common stock.

12. Defendant Thunder Bridge is a blank check company formed in order to effect a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or other similar business combination with one or more businesses or entities. The Company's principal executive office is located at 9912 Georgetown Pike Suite D203 Great Falls, Virginia 22066. Thunder Bridge's securities are quoted on the Nasdaq stock exchange under the ticker symbols THBRU, THBR and THBRW.

13. Individual Defendant Gary Simanson has served as the Chief Executive Officer and as a director at all relevant times.

14. Individual Defendant David E. Mangum has served as a director at all relevant times.

15. Individual Defendant Mary Ann Gillespie has served as director of the Company at all relevant times.

16. Individual Defendant Robert Hartheimer has served as director of the Company at all relevant times.

17. Individual Defendant Stewart Paperin has served as director of the Company at all relevant times.

18. Individual Defendant Allerd Derk Stikker has served as a director of the Company at all relevant times.

19. The Individual Defendants referred to in ¶¶ 13-18 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with Thunder Bridge they are

referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

I.  **Background and the Proposed Merger**

20. Thunder Bridge is a blank check company incorporated in Delaware and formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or similar business combination with one or more businesses.

21. Indie offers highly innovative automotive semiconductors and software solutions for Advanced Driver Assistance Systems (ADAS), including LiDAR, connected car, user experience and electrification applications.

22. On December 15, 2020, Thunder Bridge issued a press release announcing the Proposed Merger (the "Merger Announcement"), which states in relevant part:

> **indie Semiconductor Enters Definitive Merger Agreement with Thunder Bridge Acquisition II, Ltd.**
>
> ALISO VIEJO, Calif. & GREAT FALLS, Va.--(BUSINESS WIRE)--indie Semiconductor, a next generation automotive semiconductor and software innovator, and Thunder Bridge Acquisition II, Ltd. (Nasdaq: THBR), a special purpose acquisition company, today announced they have entered into a definitive agreement for a business combination that would result in the combined entity continuing as a publicly listed company. Upon closing of the transaction, the combined operating entity will be named indie Semiconductor, Inc. and will be listed on the Nasdaq Stock Market under the ticker symbol INDI. The transaction reflects an implied equity value for the combined company of roughly $1.4 billion.
>
> indie is at the forefront of disruptive automotive megatrends spanning ADAS/Autonomous, Connectivity, User Experience and Vehicle Electrification. Today, indie's automotive semiconductor portfolio addresses a $16 billion market, according to IHS, which is expected to exceed $38 billion by 2025 driven by strong demand for silicon and software content in automobiles. indie's best-in-class, mixed signal syindie-on-a-chip (SoC) solutions are currently on 12 Tier 1 approved vendor lists, contributing to a strategic backlog position of more than $2 billion, defined as projected revenues based on existing contracts, design and pricing terms and historic production trends.

"Thunder Bridge II has found an outstanding merger partner in indie Semiconductor," said Gary Simanson, president and CEO of Thunder Bridge II. "Donald McClymont and his team have established a leadership franchise with a differentiated product offering, having shipped over 100 million units to Tier 1 automotive suppliers globally. By virtue of our combination, we believe that indie will have the financial firepower to accelerate the Company's strategic growth initiatives and help create an Autotech pureplay powerhouse."

"indie is empowering the Autotech revolution with our highly innovative syindie solutions," said Donald McClymont, indie's co-founder, chairman and chief executive officer. "Our mixed signal SoC platforms are enabling a diverse set of rapidly emerging automotive megatrends that have reached an inflection point. Accordingly, we are excited to partner with Thunder Bridge II at this key growth juncture to capitalize on our existing design win pipeline, extend indie's product reach, drive scale and further consolidate within Autotech, ultimately creating shareholder value as a public company."

Upon the closing of the transaction, the combined company will be led by indie's management team. Prior to founding indie, Donald McClymont held executive roles at Axiom, Skyworks and Conexant. He is joined by Co-founder and President Ichiro Aoki, Ph.D., and Co-founder and Chief Technology Officer Scott Kee, Ph.D., as well as Chief Financial Officer and EVP of Strategy, Thomas Schiller, who previously led highly successful IPOs and M&A initiatives at Skyworks, Conexant and Rockwell Semiconductor Syindies. Together, the indie management team has demonstrated a track record of scaling new business and creating extraordinary shareholder value. indie is headquartered in Aliso Viejo, California, and has a global footprint of design centers and sales offices across the U.S., Europe and Asia.

**Transaction Overview**

The transaction reflects an implied equity value of the combined company of $1.4 billion, based on current assumptions, with a $10.00 per share PIPE subscription price. Upon closing, the combined company will receive up to $495 million in cash, comprised of a $150 million PIPE and up to $345 million in cash held in trust by Thunder Bridge II, assuming no redemptions by THBR shareholders. The boards of directors for both indie and Thunder Bridge II have unanimously approved the proposed business combination, which is expected to be completed in the first quarter of 2021, subject to, among other things, the approval by Thunder Bridge II's shareholders, satisfaction of the conditions stated in the definitive agreement and other customary closing conditions, including a registration statement being declared effective by the U.S. Securities and Exchange Commission (the "SEC"), the receipt of certain regulatory approvals, and approval by The Nasdaq Stock Market to list the securities of the combined company.

## II.     The Registration Statement Omits Material Information

23.     On January 25, 2021, Defendants filed the materially incomplete and misleading Registration Statement with the SEC. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision in connection with the Proposed Merger.

24.     The Registration Statement omits material information about Morgan Stanley, its relationships, and its role in the events leading up to the Proposed Merger. The Registration Statement even fails to identify Morgan Stanley as Thunder Bridge's financial advisor, as was stated in the Merger Announcement.

25.     First, the Registration Statement entirely omits the historical relationship between Morgan Stanley on the one hand, and the Company, the Individual Defendants, indie, or any affiliates thereof on the other, including all compensation received or expected to be received from any work performed. Indeed, the Registration Statement fails to disclose what role Morgan Stanley played in the Proposed Merger, whether they provided any financing, or the amount of fees Morgan Stanley received or expects to receive.

26.     Second, the Registration Statement fails to identify how Morgan Stanley advised the Board in the transaction, including whether it conducted financial analyses in order to assess the fairness of the merger. This of the utmost importance because of the Board's failure to obtain a fairness opinion. While fairness opinions are not required by law, today's directors are typically unwilling to approve a transaction and let the shareholders assess the merits of the deal without

one. As a result, "a fairness opinion from an investment bank" has become "a practical requirement to get the deal done." Troy A. Paredes, *Corporate Decisionmaking: Too Much Pay, Too Much Deference; Behavioral Corporate Finance, CEOs, and Corporate Governance*, 32 Fla. St. U.L. Rev. 673, 723 (Winter, 2005). If the Board was provided with analyses which provided an implied present value of the post-merger entity, stockholders asked to vote on the Proposed Merger would find this information obviously material.

27. Third, the Registration Statement fails to adequately inform stockholders of the remuneration that Morgan Stanley will earn regarding its role for underwriting the IPO. The Proxy states that the IPO underwriters are entitled to aggregate deferred underwriting commissions of $12,075,000 consisting of 3.5% of the gross proceeds of the IPO. However, the Registration Statement fails to identify the percentage attributed to Morgan Stanley and the remuneration Morgan Stanley expects to receive for its role facilitating the PIPE transaction. Considering that Morgan Stanley is the Company's financial advisor, stockholders are entitled to fully understand their unique interests effectuating the Proposed Merger. Especially as the costs of the underwriting fee dilute stockholders' ownership in the post-merger entity. Michael Klausner, *A Sober Look at SPACs*, HARVARD LAW SCHOOL FORUM ON CORPORATE GOVERNANCE, https://corpgov.law.harvard.edu/2020/11/19/a-sober-look-at-spacs/ (last accessed Feb. 22, 2021). In short, stockholders have been left bearing the costs of Morgan Stanley's engagement without full disclosure of what those costs are.

28. In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act and the Individual Defendants' duty of candor/disclosure.  Absent disclosure of the foregoing material information prior to the forthcoming Shareholder Vote, Plaintiff will be unable to cast an

informed vote regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act

29. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

30. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any Registration Statement or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

31. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Registration Statement communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

32. The omission of information from a Registration Statement will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

33. Defendants have issued the Registration Statement with the intention of soliciting the Company's common shareholders' support for the Proposed Merger.  Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails

9

to provide critical information regarding, amongst other things, the conflicts of Morgan Stanley.

34.     In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

35.     The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger. The Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

36.     The Individual Defendants were, at the very least, negligent in preparing and

reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement.

37. Thunder Bridge is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

38. The misrepresentations and omissions in the Registration Statement are material and Plaintiff will be deprived of his right to cast an informed vote on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of Thunder Bridge's shareholders. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. The Individual Defendants acted as controlling persons of Thunder Bridge within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or knowledge of the misleadingly incomplete statements contained in

the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the material statements that Plaintiff contends are incomplete and misleading.

41. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The Registration Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing this document.

43. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

44. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9

by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

46. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

### Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Registration Statement did not omit any material information or contain any materially misleading statements.

49. As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Registration Statement to be disseminated to Plaintiff and the Company's other public shareholders.

50. The misrepresentations and omissions in the Registration Statement are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

51. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's

equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the special meeting of Thunder Bridge shareholders to vote on the Proposed Merger or consummating the Proposed Merger, until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 1, 2021                **MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*