

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
ATTORNEYS AND COUNSELORS AT LAW

280 Park Avenue | 15th Floor West
New York, NY 10017
T 646.428.2600  F 646.428.2610
nelsonmullins.com

Alan F. Kaufman
T 646.428.2616
alan.kaufman@nelsonmullins.com

May 7, 2021

**Via ECF**

Honorable Lorna G. Schofield, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

   Re: *Johnathon Householder v. Thunder Bridge Acquisition II, Ltd., et al.*
      Case No. 1:21-cv-01768-LGS

Dear Judge Schofield:

  Our firm represents Defendants, Thunder Bridge Acquisition II, Ltd. ("Thunder Bridge") and Gary Simanson, David E. Mangum, Mary Anne Gillespie, Robert Hartheimer, Stewart Paperin, and Allerd Derk Stikker ("Individual Defendants") (collectively "Defendants"), in the above-referenced matter. We respectfully write to request the Court enter a briefing schedule for Defendants' anticipated motion to dismiss Plaintiff Johnathon Householder's Complaint dated March 1, 2021 ("Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(3) and (6).[1]

  By way of background, Thunder Bridge is a special purpose acquisition company ("SPAC") that was "formed to raise funds in a public stock offering for the purpose of purchasing a private business." Brandon Schumacher, *A New Development in Private Equity: The Rise and Progression of Special Purpose Acquisition Companies in Europe and Asia*, 40 NW. J. INT'L L. & BUS. 391, 397 (2020). Typically, a SPAC raises funds through an initial public offering and then has a specific timeframe of 18 to 24 months to acquire a company using those funds. *Id.* "If a target is found, investors in the SPAC 'have a pre-acquisition choice either to get their money back, or to remain as 'shareholders of the now-public firm.''" *Id*. In other words, a SPAC shareholder who does not approve of a proposed merger with the target company has a right "to liquidate his investment in the SPAC" and receive his or her "full investment back before the deal takes place." *Id*. at 398.

  In this securities action, Plaintiff alleges that Defendants misinformed shareholders, including himself, in order to secure votes on an upcoming proposed merger between Thunder

---

[1] This letter regarding Defendants' proposed motion under Rule 12(b) is being transmitted pursuant to Section III(C)(2) of Your Honor's Individual Rules and Procedures for Civil Cases, which stays the time for Defendants to answer or move in response to the Complaint until further order of the Court.

1

Bridge and Ay Dee Kay, LLC d/b/a indie Semiconductor ("indie"). Specifically, Plaintiff alleges that Defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 by filing a Form S-4 (the "Registration Statement") with incomplete information about Morgan Stanley's involvement in the merger as financial advisor and lead private placement agent to Thunder Bridge. Compl. ¶ 3. Plaintiff has also asserted a state law claim for breach of the fiduciary duty of candor/disclosure based on the same alleged misstatements or omissions. However, the Complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6) against any Defendants for several reasons, including but not limited to those set forth herein.[2]

*First*, Plaintiff has failed to plead an adequate claim under Section 14(a) of the Exchange Act. To state a claim under Section 14(a), a plaintiff must "allege[] facts that (1) the [Registration Statement] contained a material misrepresentation or omission, which (2) caused his injury, and (3) that the [Registration Statement] itself, rather than the particular defect in the solicitation materials, was an essential link in accomplishing the merger." *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 384 (S.D.N.Y. 2020) (quoting *Bond Opportunity Fund v. Unilab Corp.*, No. 99 Civ. 11074(JSM), 2003 WL 21058251, at *3 (S.D.N.Y. May 9, 2003)).

Plaintiff's claims are based solely on information he claims has been omitted from the Registration Statement. However, the purported bases for these claims are demonstrably false, as the Registration Statement does, in fact, include information regarding Morgan Stanley that Plaintiff claims is omitted.[3] Moreover, even if the information identified in the Complaint had not been included within the Registration Statement (which it was), Plaintiff has failed to identify (a) any SEC regulations requiring disclose of that information; or (b) any statements contained in the Registration Statement rendered false or misleading by the alleged omissions. As the Second Circuit Court of Appeals recognized in *Resnik v. Swartz*, the omission of information from a proxy statement is generally actionable only "if either the SEC regulations specifically require disclosure of the omitted information in a proxy statement, *or the omission makes other statements in the proxy statement materially false or misleading*." 303 F.3d 147, 151 (2d Cir. 2002) (emphasis added). These failures are fatal to Plaintiff's Section 14(a) claims.

*Second*, Plaintiff's failure to adequately plead a primary violation under Section 14(a) (for the reasons described above) also requires dismissal of his Section 20(a) claim. *See Bond Opportunity Fund*, 2003 WL 21058251, at *11 (dismissing Section 20(a) claims where Complaint failed to state an underlying violation of Section 14(a)). Further, to the extent Plaintiff has failed to plead any claims under the Exchange Act, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law breach of fiduciary duty claim. *See id.* (finding "no reason or basis upon which to retain supplemental jurisdiction" over remaining state law claims where the court determined that securities law claims should be dismissed).

---

[2] In the interest of brevity, Defendants have provided a condensed overview of the arguments for dismissal that they intend to include in their motion to dismiss. Defendants respectfully reserve the right to raise additional or different arguments in their motion beyond those referenced in this letter as appropriate.

[3] For example, the Registration Statement discloses the engagement of Morgan Stanley to provide financial advice and assistance to Thunder Bridge in connection with the proposed transaction and provides a detailed background on various calls prior to and after this engagement in which Morgan Stanley participated during the sales process. *See* Registration Statement, at 109–12.

***Finally***, Plaintiff has not alleged, and cannot allege, any compensable injury suffered based on any alleged omissions in the Registration Statement. A unique feature of SPACs is the shareholder's redemption right, whereby a shareholder that does not approve of a proposed transaction may "liquidate his investment in the SPAC" and "*be given their full investment back before the deal takes place*." Schumacher, *supra*, at 398 (emphasis added). Thus, Plaintiff can identify no loss suffered as the result of any statements in the Registration Statement—the transaction has not yet been closed and Plaintiff retains his redemption rights until that time, so the value of his shares is *at a minimum* exactly what he paid for them.[4] Plaintiff has failed to identify any compensable injury suffered as a result of the allegedly inadequate Registration Statement, as necessary to adequately plead the claims asserted in this action.

In addition, Defendants intend to move this Court in the same motion for dismissal on the grounds of improper venue and/or *forum non conveniens*. Defendants have no connection to the state of New York or the Southern District of New York, other than the fact that Thunder Bridge is publicly traded on NASDAQ. Thunder Bridge is a Caymans Island company with its principal place of business in Virginia, and the Individual Defendants are all residents of states other than New York or, as to one Individual Defendant, a foreign country. Moreover, Plaintiff's claims relate not to trades performed through NASDAQ, but rather to a Registration Statement filed by Thunder Bridge with the United States Securities and Exchange Commission based in Washington, D.C.

Accordingly, we respectfully request that this Court allow Defendants to proceed with their anticipated motion to dismiss the Complaint pursuant to the following briefing schedule:

- Defendants shall file their motion to dismiss within 14 days of this Court's Order entering a briefing schedule;
- Plaintiff shall file any opposition within 21 days of Defendants' filing; and
- Defendants shall file any reply in further support of their motion within 14 days of Plaintiff's opposition (if any).

We thank the Court for its consideration.

Respectfully submitted,

/s/ *Alan F. Kaufman*

Alan F. Kaufman

cc:     All Counsel of Record (via ECF)

---

[4] Thunder Bridge's stock is freely traded on NASDAQ. The Registration Statement was publicly filed on January 25, 2021 and THBRU closed at $16.99 that day, a 69.9% premium *over* Plaintiff's purchase price. If Plaintiff did not believe the Registration Statement contained sufficient information to allow him to vote his shares in favor of the proposed transaction, he was free to sell those shares at a substantial profit, but in any event is guaranteed to receive his money back should he exercise his redemption rights. These facts also demonstrate that Plaintiff has both an adequate remedy at law and that he would not suffer irreparable harm if the transaction is completed, precluding injunctive relief. *See Litwin v. OceanFreight, Inc.*, 865 F. Supp. 2d 385, 400 (S.D.N.Y. 2011) (rejecting contention that "shareholders' ability to make an informed decision" would be foreclosed without injunctive relief and finding there was "no legally cognizable harm, let alone irreparable harm" where minority shareholder could not influence the outcome of the vote).